METROPOLITAN LIFE INSURANCE COMPANY *v.* DUTY.

4-5406 .126 S. W. 2d 921

Opinion delivered April 3, 1939.

*Daily & Woods,* and *Jeff Rice,* for appellant.

*Duty & Duty* and *Vol T. Lindsey,* for appellee.

MEHAFFY, J. On April 30, 1938, Rella Duty filed a complaint in the Benton circuit court against the appellant, Metropolitan Life Insurance Company. Service was had on the insurance commissioner, and the appellant, after receiving the summons, communicated with Daily & Woods on May 6, 1938. Appellant directed Daily & Woods to appear and protect the company's interests, and if necessary, to employ associate counsel to assist. The letter to Daily & Woods further stated that after they had had an opportunity to communicate with plaintiff's attorney, to advise them as to the number of the policy involved, name of the insured, and nature of the action. When Daily & Woods received this letter, they wrote to Mr. Fred Allred, clerk of the Benton circuit court, requesting that he send a copy of the complaint and inquired about the time the court would meet with jury in the future. The letter to the clerk stated: "Also please notify us the date of the convening of the next jury term of your circuit court." They did not make a request to know when court would meet except to ask when it would meet with a jury. The clerk, on May 10, 1938, wrote to Daily & Woods as follows: "No date set for court with jury. If you will write me later, maybe I will know."

On May 31, 1938, judgment by default was entered against the appellant. On May 31, 1938, counsel for the Metropolitan Life Insurance Company forwarded to the clerk of the Benton circuit court by mail, the answer of the Metropolitan Life Insurance Company together with a check for $2.50 as a deposit for costs. This answer was received by the clerk of the Benton circuit court on June

1, 1938, and was filed on that day. The clerk immediately wrote attorneys. for the appellant that he had filed the answer, but that judgment was rendered against the Metropolitan Life Insurance Company in circuit court on May 31, 1938, in the amount of $3,000 and costs, and the clerk returned to the attorneys their check.

After the default judgment, Daily & Woods employed Mr. Jeff Rice, an attorney at Bentonville, who examined the records to ascertain when court adjourned and what the record showed. Thereafter, on June 17, 1938, the Metropolitan Life Insurance Company filed suit in the Benton circuit court against Rella Duty to set aside and vacate the default judgment rendered on May 31, 1938. The suit was based on § 8248 of Pope's Digest, which is as follows:

"The proceedings to vacate or modify the judgment or order on the grounds mentioned in the fourth, fifth, sixth, seventh and eighth subdivisions of § 8246 shall be by complaint, verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On the complaint, a summons shall issue and be served, and other proceedings had as in an action by proceedings at law."

The appellant, in its suit against Rella Duty, prayed that the default judgment be vacated, set aside and held for naught. The appellant, in its complaint, set up the facts above stated and alleged that it had a valid and meritorious defense to the action and suit brought by Rella Duty against it. Appellant sets out in its complaint what it alleges the meritorious defense is.

On September 19, 1938, the appellee, Rella Duty, filed answer to the complaint of appellant denying each and every material allegation contained in the complaint, and asked that the complaint be dismissed, and that she recover costs.

On October 17, 1938, the court found that the appellant had no grounds for setting aside the judgment, and dismissed appellant's complaint. Appellant was given ten days to file a motion for new trial.

Motion for new trial was filed within the time allowed by the court, which motion was overruled. Appeal to this court was granted, and ninety days granted in which to prepare and file bill of exceptions. The bill of exceptions was filed and the case is here on appeal.

Mr. John S. Daily, a member of the firm of Daily & Woods, testified that they received notice of the pendency of this suit by letter from the home office dated May 6, 1938; there was enclosed a copy of the summons and the general counsel of the home office wrote Daily & Woods to appear and protect the company's interests, and if necessary employ associate counsel; the letter asked for certain information and when the letter was received by Daily & Woods witness wrote Fred Allred, clerk of the Benton circuit court requesting information about the time court would meet and asked specifically when court would meet with a jury; the clerk, on May 10th, wrote Daily & Woods that there was no date set for court with jury, but if they would write him later he would probably know. Witness further testified that the complaint was signed by Vol T. Lindsey as the sole attorney for plaintiff; witness was in Fayetteville on the 17th, 18th or 19th of May, does not recall which day: had planned to go on to Bentonville on that trip and confer with Mr. Lindsey, the attorney for Rella Duty; his business in coming to see him was to explain that he had not received the file from the company and was not prepared to file an intelligent answer; witness wanted to secure an agreement to defer the filing of an answer until he had full information; he learned while at Fayetteville that Mr. Lindsey was ill and had left or was leaving immediately for the Mayo Clinic, and for that reason he did not go on to Bentonville; he later learned that Mr. Lindsey would not be back for several weeks; on May 28 he received the file from the New York office, and the following day mailed answer together with costs deposit to Mr. Allred, the clerk; the letter was mailed May 31st and returned to him with a note stating that the answer had been received, but that judgment had been entered the day before; this letter was not received at the office

of Daily & Woods until June 2. As soon as witness received the letter from the clerk he called him by long distance telephone and asked him why he had not notified him that court would meet on May 31st, and the clerk stated that he did not know it or he would have notified him; witness then called Mr. Jeff Rice, attorney in Bentonville, requesting that he investigate the matter, and then went to Bentonville and conferred with Mr. Lindsey; sought his consent to set aside the default judgment, and explained to him what had occurred; Mr. Lindsey refused to agree to set the judgment aside and thereupon complaint was filed in this case. He did not give witness any notice of any kind that court would be held on May 31st; first notice they had was on June 1st that a default judgment had been entered on the previous day; he wrote the insurance company on the 11th enclosing copy of complaint, and the next time he heard from the company was the 28th or 29th of May; when asked if there was anything unusual about the suit, he answered that there was; that this claim was in connection with a policy upon which a death benefit had previously been paid, and the claim and file had been closed almost a year previously, and the papers and records would not be in the active files of the company; he understood that answer was required to be filed by noon of the first day court is in regular or adjourned session, twenty days after service had; does not know that he told the company this; wrote them on the 11th sending a copy of the complaint and asked the company to send file immediately so answer could be filed before service matured. The answer filed was a general denial and was forwarded on May 31st; this answer did not have any allegations in it, except a general denial; got the impression from Mr. Allred's reply to his letter that he was speaking about when court would be back; did not write the clerk any more and made no further inquiry until the letter of June 2nd was received; the reason he did not was that he did not have full information with reference to the claim, and was in no position to file an answer; he knew the plaintiff's attorney was ill and out of the state, and

did not know that any other attorneys would appear in the case and ask for default judgment; this is the first time he·has ever had any connection where the opposing side has sought a default judgment without giving advance notice; he was in Fayetteville on the week of the 16th; was informed that Mr. Lindsey was ill and had gone or was leaving for Mayo's Clinic; he does not know who told him, but there was a group of persons and one of them told him; called Mr. Rice on June 2nd; did not call Lindsey's office in Fayetteville because he had no reason to question the correctness of his information; was authorized·by the company to employ local counsel and did not call local counsel and ask him to look out for the day of adjourned court; there was no reason to prevent him from filing an answer between May 10th and May 21st; he could have prepared a general denial.

The following letters were introduced in evidence:

"May 6, 1938.

"In Re: Rella Duty v. Metropolitan

"(HDG-15371)

"Daily & Woods, Esquires

"Attorneys at Law

"Merchants National Bank Building

"Fort Smith, Arkansas

"Gentlemen:

"We enclose herewith summons in the above entitled action served upon the Insurance ·Commissioner of Little Rock, Arkansas, on May 2, 1938. Please appear and protect our interests. If necessary, we suggest that you employ associate counsel to assist you in·this matter.

"After you have had an opportunity to communicate with plaintiff's attorney, we should appreciate your advising us as to the number of the policy involved, the name of the insured and the nature of the action. Upon receipt of this information we shall promptly forward our file to you.

"Yours very truly,

"Harry ·Cole Bates

"General Counsel."

\* \* \* \* \*

1124

"Harry P. Daily  ·  John P. Woods
"Daily & Woods
"Attorneys at Law
"Merchants National Bank Building
"Fort Smith, Ark.
"May 9, 1938.
"Mr. Fred Allred
"Circuit Clerk
"Benton County,
"Bentonville, Ark.
"In Re: Relly Duty v. Metropolitan Life Ins. Co.
"Dear Sir:

"Please send us copy of the complaint in the captioned case.

"Also, please notify us the date of the convening of the next jury term of your circuit court.

"For your convenience, we enclose a stamped addressed envelope.
"Yours very truly,
"Daily & Woods
"J. S. Daily.
"JSD:IB."

\*  \*  \*  \*  \*

"May 11, 1938·

"Mr. Harry Cole Bates, General Counsel
"Metropolitan Life Insurance Company,
"New York, N. Y.
"Dear Mr. Bates:
"Re: Rella Duty v. Metro.
"(HDG-15371)

"We enclose herewith copy of the complaint filed in the captioned case.

"The next regular term of the Benton circuit court is the third Monday in September. The clerk notifies us that judge has made no announcement for an adjourned jury term before that date. However, under a recent act of our Legislature, the judge can convene court on five days notice, and we, therefore, should file some pleading

before the service matures. We, therefore, suggest that your file come forward immediately.

> "Yours very truly,
> "Daily & Woods

"jsd;a."

\* \* \* \* \*

"Metropolitan Life Insurance Company
"Frederick H. Ecker, Chairman of the Board
"Leroy A. Lincoln, President
"New York City

"May 24, 1938

"In Re: Rella Duty v. Metropolitan
"(HDG-15371) Policy No. 2770
"GLHD, Serial No. 5874, John R. Duty, Insured.
"Daily & Woods, Esqs.,
"Attorneys at Law,
"Merchants National Bank Building,
"Fort Smith, Arkansas.
"Gentlemen:

"We acknowledge receipt of your letter of May 11th and are enclosing herewith our original file relating to the subject matter of this suit, together with a copy of the certificate issued to John R. Duty and a copy of the master policy.

"Due to the absence of Mr. Guthrie, the attorney in charge of this case, we are unable to write you in detail regarding this matter. We will, however, write you more fully at the later date.

"Meanwhile, we should appreciate receiving your comments and suggestions.

> "Yours very truly,
> "Harry Cole Bates
> "General Counsel

"HDG:DS
"Encls."

\* \* \* \* \*

Mr. Fred Allred testified that he was circuit clerk of Benton county, Arkansas; that he had in his hand law record "H" of the circuit court; when asked to turn to the record or adjournment order under which the court

purported to have reconvened May 1, 1938, he said: "May 16, 1938, order by the court that court adjourned until May 31, 1938." He testified that on May 31st and on June 3rd, when Mr. Rice examined their records, those words were not on there; they were not that near up with their work, but had the calendar circled on that date; the typewritten words of the court order were written after May 31, 1938; the court did not make it a written order on his desk docket; they just circle the calendar to show when court is to meet again; he made the order on May 16th; witness does not know whether he heard it or whether the judge told him or the girl; they circled the calendar; there was nothing on the record to show that the court had adjourned until May 31st until it was put on the record, after May 31st; thinks they had it marked on the calendar when Mr. Rice came in. He was then asked if, when Mr. Rice examined the records on June 3rd or 4th, there was nothing on the record to show when court adjourned to; the court held this evidence incompetent.

Mr. Jeff Rice, an attorney at Bentonville, testified that he was an attorney and that subsequent to May 31, 1938, made an inspection of the records in the office of Mr. Allred, clerk, for the purpose of finding the last adjourning order entered in that record; he made the inspection on June 3rd, when asked what was the last adjourning order of the court appearing on the record, objection was made and sustained. The appellant then offered to prove that Jeff Rice, on June 3rd, inspected the record of the Benton circuit court, and the last adjourning order was one in which court adjourned until May 16th. Mr. Rice also testified that he did not know whether he was in Bentonville on May 31st, but does not believe he was in court; he heard there was a day of court; heard that Judge Combs was going to be there and hold court that morning.

Mr. Allred was recalled and testified that Mr. Lindsey was absent from Benton county on May 31st, and he understood he was away then at the hospital; does not

know when he left, but sometime prior to May 31st, and returned sometime after that date.

The appellant then offered to introduce the policy and other exhibits and other evidence to show that it had a meritorious defense, but the court declined to permit them to introduce any evidence as to a meritorious defense.

Appellant first contends for a reversal because it says:

"The plaintiff's evidence established an unavoidable casualty or misfortune within the meaning of paragraph 7, § 8246, of Pope's Digest."

Paragraph 7 of § 8246 of Pope's Digest reads as follows: "For unavoidable casualty or misfortune preventing the party from appearing or defending."

The evidence shows that there was no record made either by the judge or the clerk to indicate that court had adjourned to the 31st day of May. No one could examine the record and tell what day court would convene. The clerk testified that when the court would adjourn to a certain date, there would be no notation or record on the judge's docket indicating when court would convene, but that the judge would announce the date, and the clerk, instead of putting it on the record at that time, would circle his calendar. That evidently means that he would draw a circle around the day on the calendar when court would meet. But there is no evidence tending to show where he kept his calendar, and if there had been, it would not convey the information to any person that court would meet on a certain date because there was nothing on the calendar, according to the evidence, except a circle around the date.

"The law requires a party to keep himself informed of the progress of the case, and he must find out when his case is set for trial or when it is likely to be reached. However, the negligence of an attorney may be excusable when attributable to an honest mistake, an accident, or any cause which is not incompatible with probabilities on his part; and under such circumstances it is proper to set aside a judgment taken by default. 34 C. J. 309.

This court, in the case of *Leaming* v. *McMillan,* 59 Ark. 162, 26 S. W. 820, 43 Am. St. Rep. 26, quoted with approval from the case of *Tidwell* v. *Witherspoon,* 18 Fla. 282, as follows:

" 'The neglect of an attorney to prepare and file a plea, caused by his being summoned to a distant place on account of the serious illness of his wife, even though he might have made arrangements with another attorney to prepare it, or might have notified his client, yet did not do so because of his anxiety for his family, is not such neglect as should operate to the prejudice of his client.' And in this case the judgment by default was opened up."

The court stated in the case of *Leaming* v. *McMillan, supra*: "It appears from the statements of the case, that the failure of the plaintiff, Darling, to appear at the term of the court when the judgment of dismissal was rendered was caused by an unavoidable casualty, and that the non-attendance of himself and counsel was excusable under the circumstances."

Where a suit was brought under the section relied on by appellant here, the trial court set aside the default judgment, and said, among other things: " 'An Act of the court shall prejudice no man, is a mixim founded,' says Mr. Broom, 'upon justice and good sense.' Broom's Legal Mixims, p. 99. And while the facts may not bring the present case technically within this ancient maxim, the principle it announces should, by analogy at least, be and is applied here to sustain the judgment of the court, which is accordingly affirmed." *Thweatt* v. *Knights & Daughters of Tabor,* 128 Ark. 269, 193 S. W. 508.

In the instant case the undisputed evidence shows that there was no record of the adjournment and no one could examine the records and ascertain when court would meet, or ascertain that there would be an adjourned term. Moreover, the evidence shows that the attorneys for appellant had information that the attorney for appellee was ill and had either gone to the Mayo Clinic at Rochester, Minnesota, or was going immediately. The attorney, also, testified that he talked with the

clerk over the telephone after default judgment was had, and asked the clerk why he did not notify him that court was going to meet on that date, and the clerk said that he did not know it himself.

A majority of the court is of the opinion that the evidence shows unavoidable casualty or misfortune preventing the appellant from appearing and defending.

Mr. Justice Humphreys and the writer do not agree with the majority in this holding.

As to whether the attorneys for appellant were guilty of negligence, it may be said that they were required to do just what a man of ordinary prudence would have done under the circumstances, and if they did this, they were not guilty of negligence.

The court would not permit appellant to introduce evidence of a meritorious defense. Of course if there was no unavoidable casualty or misfortune, it would not be proper to introduce this evidence, but since a majority of the court holds that there was unavoidable casualty and misfortune, this evidence was proper, because, in order to get the judgment set aside it is necessary that the appellant show a meritorious defense.

It follows from what we have said, that the judgment of the circuit court must be reversed, and the judgment is reversed and the cause remanded with directions to proceed with the trial of the case according to law and not inconsistent with this opinion.